### JACKSON, *ex dem.* JADWIN, *against* JOY.

*Bleecker's*      THIS was an action of ejectment for land, in *Scaghticoke,* being
*map of the Ho-* part of lot No. 40. in the *Hosick* patent.
*sick patent,*
made in 1754,    The cause was tried at the *Rensselaer* circuit, in *September,*
*is not conclu-*
*sive, where it* 1809, before Mr. Justice *Van Ness.*    The following are the ma-
*differs from*
*the actual sur-* terial facts in the case.
*vey or field*
*book made by*    *Bleecker's* map of partition, and field book of the survey of the
*him.*        *Hosick* patent, made in 1754, were produced at the trial.    The
*The question*
*of adverse*  plaintiff proved title to lot No. 40. in that patent.    *Evert Van*
*possession,*
*ought to be* *Alen,* a witness, surveyed lot No. 41. under which the defendant
*left to the ju-* claimed title to the premises.    By this line, the premises in ques-
*ry, and the*
*judge, having* tion were included in lot No. 40. but there were no marked trees
*directed the*
*jury as to that* along the disputed tract.    He run the line within a rod of the
*fact, a new* river, near the bend, and found a marked tree at the brow of the
*trial was gran-*
*ted.*        hill.    The course of the east line corresponded with *Bleecker's* map
and field book.    The distance mentioned in *Bleecker's* field book,
is 210 chains from the place where he began to run his line, and
on the map it is 213 chains.    That between the actual survey of

the witness, and that of *Bleecker*, there was a difference of 3 chains, at the bend of the river. And the witness stated that *Bleecker's* traverse of the river, if he made any, was incorrect, but he believed that *Bleecker* never made any actual survey of the river.

Another witness testified, that he traced the line of lot No. 41. in 1775, or 1776, with *Jadwin*, and found marked trees all along the line, to *Van Alen's* termination of it, at the river. One *Chase* and others, were in possession of the premises. One of them, *Hanson*, said he purchased of *Jadwin*, and claimed the premises as his own, and admitted it was within lot No. 40. The claimants against *Jadwin* alleged that the line stopped at the bend of the river.

Another witness testified, that *Hanson* owned the land adjoining the premises in question, and that his father, in 1782, hired the land of *Hanson;* that *Jadwin* collected the rent for *Hanson;* and that about 15 years ago, *Jadwin* had a survey made and claimed the premises in dispute. *Chase* and one *Jacobs*, who were in possession, agreed, about the year 1790, with *Jadwin*, that if he would show a title to the land, *Chase* would give him another lot in exchange for it. *Jadwin* exhibited his title to one *Freleigh*, who decided that *Jadwin* had no title. They afterwards agreed to submit the question to *C. Sands*, but whether it was done, did not appear. The premises have been improved above 30 years, and the occupants claimed to hold under lot No. 41. Several other witnesses testified as to the line and marked trees, &c.

The judge charged the jury, that the *map* made by *Bleecker* was not conclusive, but the line between lots No. 40. and 41. as run by *Van Alen*, was proved to be the true line, and corresponding with the actual survey and *field book* made by *Bleecker*. That the defendant must rest entirely on his adverse possession, which he had not proved, and that they ought to find a verdict for the plaintiff. The jury found a verdict accordingly.

A motion was made to set aside the verdict, and for a new trial.

*Foot,* for the defendant.

*Van Vechten,* contra.

NEWYORK,    *Per Curiam.* The premises lie in lot No. 40. which belongs
May, 1812.  to the lessor of the plaintiff. The defendant, who claims under
JACKSON     title to lot No. 41. contends, that the line run by *Bleecker*, as the
v.          division line between those lots, terminated at the pine tree. But
BURR.       the line must be continued to the river, and the testimony fully
establishes a continuation of a line of marked trees. *Bleecker's*
map has never been considered as conclusive, in opposition to the
true lines, founded upon his actual survey. In all the cases,
hitherto before the court, respecting the *Hosick* patent, the map and
the survey of *Bleecker* were assumed to agree, and it was *Bleeck-
er's survey* that the courts have so repeatedly sanctioned. (2
*Caines' Rep.* 177. 2 *Johns. Rep.* 297. 5 *Johns Rep.* 496.
506.) On the part of the defendant, there is, however, a strong
case of adverse possession made out. This possession has been
continued for nearly 40 years, and would be conclusive, unless the
*agreement* said to have been made in the year 1790, between
*Jadwin, Chase* and *Jacobs*, should be deemed sufficient to take
the case out of the statute of limitations. By that agreement,
the possession was to be delivered to *Jadwin*, if he would maintain a
title, and *Jadwin* submitted his title to one *Freleigh*, who decided
against its validity. It was afterwards agreed to be submitted to
*C. Sands*, but this agreement was never carried into effect. The
decision by *Freleigh* was 19 years before the trial; and it is rea-
sonable to presume that *Jadwin*, at that time, had abandoned his
title. This question of adverse possession, ought at least, to have
been submitted to the jury.

A new trial must be granted with costs to abide the event of the
suit.