SIMEON BOWEN & another *vs.* CHARLES L. GUILD.

Bristol. Oct. 27, 1880. — Jan. 8, 1881. AMES & ENDICOTT, JJ., absent.

An entry on land by a person disseised, merely for the purpose of seeing if there is any evidence of an adverse occupation, is not, as matter of law, conclusive evidence of an interruption of the disseisor's adverse possession.

TORT for breaking and entering the plaintiff's close in Attleborough, and erecting a fence thereon. At the trial in the Superior Court, before *Bacon*, J., the jury returned a verdict for the plaintiffs; and the defendant alleged exceptions, which, so far as material to the point decided, appear in the opinion.

*W. H. Fox*, for the defendant.
*G. Marston*, for the plaintiffs.

LORD, J. We have deemed it necessary in this case to consider but one of the various questions raised by the defendant. Mr. Ellis Ames, a counsellor of this court, testified "that in August, about the year 1870, he went upon the land with Mr. Bowen, one of the plaintiffs; that they went all over the land and saw no fence, either upon the road or any other side of the land; that the land was rough and uncultivated; that bushes were growing upon a part of it; that he saw no indication that the land had been cultivated that year; that he saw no one else

on the land; and that they went upon the land for the purpose of discovering, if they could, any evidence of adverse occupation upon which he could bring a writ of entry against Charles L. Guild." The presiding judge ruled that, if the facts thus testified to were true, they constituted, as matter of law, necessarily, an interruption of an adverse possession of the defendant, commencing at the time of the institution of the former suit, in August 1857, and continuing, with such exception, to the commencement of the present action, in October 1878, a period of more than twenty years.

This ruling seems to have been based upon a misapprehension of the decision in *Brickett* v. *Spofford*, 14 Gray, 514. In that case, it appeared that the owner of the land went upon it in company with one who proposed to purchase it, for the purpose of ascertaining, in view of the proposed purchase and sale, the value of the land, the quantity and quality of the wood upon it, and such elements as were necessary to determine its value; and that after such entry the owner of the land gave a deed of it to the person who was at the time of their going upon the land negotiating for its purchase. The court did not hold, as matter of law, that such entry upon the land was conclusive upon the question of adverse possession by the defendant; but held that it was evidence to be submitted to the jury, with all the other evidence in the case, in determining whether the party did make such a reëntry as to enable him to convey his estate by deed; the only question in that case being whether the plaintiff's grantor was so disseised at the time of the conveyance as that he could not effectually convey his title except by reëntry and delivery of the deed upon the land. The defendant had been in possession only two years, and his title was obtained through a levy upon the estate which had been previously made, and which was unrecorded, and therefore void as against the plaintiff, taking a deed under the judgment debtor's title without notice. If, in that case, the entry as thus made had not been followed by the assertion of title which the conveyance by warranty deed implies, and had been followed by no other act of possession during the subsequent eighteen years during which the defendant had continued to hold it, and the court had decided that the adverse possession could not commence until after such possession,

because such an entry was an interruption to the adverse possession, that decision would have been authority for the ruling. But the question there presented was an entirely different one. It had no relation to the question of the acquisition of title by adverse possession, but only to the question whether the true owner was so disseised at the time of his grant that his deed passed no title; and in that case the decision of the court went only to the point that the evidence was proper to be submitted to the jury upon the question whether he had in fact so repossessed himself, under an entry claiming the highest right of ownership, that of selling the land, and actually selling it, after negotiations upon it, as to make his deed effectual.

The entry in this case was followed by no act of ownership, and was simply a passing over the land for the purpose of ascertaining its condition, to see whether any use had been made of it, or whether any buildings or structures had been erected upon it, and to see whether there was any evidence of a disseisin. It did not appear that such passing over the land was in presence of the defendant, or that he ever in any mode had any knowledge of it. The circumstances under which it was made, and the time of day or night, do not appear, except as it may be inferred from the known character of the gentleman under whose direction it appears to have been done. It is consistent with the actual use by the defendant of the land upon every other day of the twenty years. It was a question for the jury whether in fact it was an interruption of the defendant's possession. That fact must be determined by them upon all the evidence in the case; and it was error in the presiding judge to rule, as matter of law, that it was necessarily such a reëntry and reclamation of possession as to be an interruption in fact of the defendant's possession.

What is an adverse and exclusive possession, and what is an interruption of such possession, depend very much upon the character of the land, and the purposes to which it is adapted and for which it is used. The adverse possession of an outlying lot of small value, remote from the dwellings of people, suitable for pasturing or for the growth of wood, or for some other purpose of husbandry, is to be proved by evidence very different from that which establishes the exclusive occupation of a residence or

a shop or storehouse within the limits of a thickly settled busi-
ness population. The rule of law is the same in both cases; but
the evidence necessary to prove the fact is very different. In
either case the question is, Has the adverse possession, consider-
ing the nature, situation, and uses of the land, been exclusive and
continuous? The presiding judge having ruled that this single
fact, though proper to be considered, was in itself, as matter of
law, an interruption of the possession, it was error.

Although there may be cases in which the occupation by the
true owner may be of such a nature, and so continued, that it
would be the duty of the court, upon the truth of such facts
being apparent, to rule, as matter of law, that the adverse pos-
session had been interrupted, still the general principle is that it
is a question for the jury to determine whether in fact the ad-
verse possession has been continuous or has been interrupted.
*Stevens* v. *Taft*, 11 Gray, 33, 35. *O'Hara* v. *Richardson*, 46
Penn. St. 385. See also *Peaceable* v. *Read*, 1 East, 568; *Jack-
son* v. *Wood*, 12 Johns. 242; *Van Gorden* v. *Jackson*, 5 Johns.
440, 467; *Mayor of Hull* v. *Horner*, Cowp. 102; *Fishar* v. *Pros-
ser*, Cowp. 217; *Jackson* v. *Joy*, 9 Johns. 102; *Beverly* v. *Burke*,
9 Ga. 440; *De Haven* v. *Landell*, 31 Penn. St. 120; *Groft* v.
*Weakland*, 34 Penn. St. 304.        *Exceptions sustained.*