APPEALS COURT 
 
 PAUL E. ASPELL & another[1 ] vs. TEOFILO RAAD & others.[2]

 
 Docket:
 24-P-874
 
 
 Dates:
 September 12, 2025 – November 14, 2025
 
 
 Present:
 Vuono, Massing, & Allen, JJ.
 
 
 County:
 Middlesex
 

 
 Keywords:
 Adverse Possession and Prescription. Real Property, Adverse possession, Easement. Easement. Practice, Civil, Trial jury-waived. Rules of the Superior Court.
 
 

 Civil action commenced in the Superior Court Department on March 12, 2020. 
      The case was heard by John P. Pappas, J.
      Thomas P. Campbell for the plaintiffs.
      Scott C. Owens for the defendants.
      MASSING, J.  Plaintiffs Paul E. and Joyce M. Aspell brought this action in the Superior Court seeking to establish title by adverse possession over a strip of land between their property, located on Rockland Street in Natick, and the neighboring property to the north belonging to defendants Teofilo and Judith Raad.  In the alternative, the plaintiffs claimed a prescriptive easement over the strip.  The parties agreed to (1) a jury-waived trial and (2) to waive detailed findings of fact under Rule 20(2)(h) of the Rules of the Superior Court (2018).  At the conclusion of the trial, the judge provided answers to a set of special questions submitted by the parties and found that the plaintiffs had established adverse possession over a portion of the strip -- a triangular portion at the eastern end of the strip in the vicinity of the plaintiffs' swimming pool (pool area).  As to the rest of the strip, a largely unimproved portion abutting the plaintiffs' side and front yard (disputed area), the judge found that the plaintiffs had not established either adverse possession or a prescriptive easement. 
      The plaintiffs appeal, arguing that the judge's decision that the plaintiffs had acquired no rights in the disputed area had no rational basis in the evidence.  Given the level of deference due to a judge's decision when the parties have waived detailed written findings of fact and rulings of law, and because we find the record contains sufficient evidence to support the judge's determinations, we affirm.
      Discussion.  1.  Standard of review.  Under Superior Court Rule 20, entitled "Individual Case Management and Tracking" and applicable only to civil actions, "the parties are encouraged to consider and propose options to achieve a less costly and more expeditious resolution of their dispute."  Rule 20(2) lists a number of possible options, such as shortening tracking order dates, limiting the scope of discovery, or early scheduling of a "prompt and firm trial date."  Under rule 20(2)(h), the parties may also opt for a bench trial with "additional conditions," including "waiver of detailed written findings of fact and rulings of law."
      When the parties waive detailed written findings of fact, the rule provides that "[t]he judge shall, at a minimum, answer special questions on the elements of each claim."  Superior Court Rule 20(8)(a).  In addition, the rule sets forth a deferential standard of review applicable when written findings are waived:
"The parties waive all arguments in the trial court or on appeal that require or depend upon the existence of detailed written findings of fact.  Any appellate review of the court's decision and of the judgment entered shall be according to the standard of review that would apply to a verdict by a jury in a case tried to a jury and to the judgment entered thereon."
 Superior Court Rule 20(8)(b).  See K & K Dev., Inc. v. Andrews, 103 Mass. App. Ct. 338, 344 (2023) (when rule 20[2][h] is invoked and appellant challenges sufficiency of evidence, "appellate review is conducted according to the same standard as that applied to a judgment entered following a jury verdict").  Under this standard, the judge's decision will be affirmed so long as "anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of" the prevailing party.  Id., quoting Motsis v. Ming's Supermkt., Inc., 96 Mass. App. Ct. 371, 380 (2019).  In other words, we will not set aside the judgment unless we find it "has no rational basis in the evidence."  Brewster Wallcovering Co. v. Blue Mountain Wallcoverings, Inc., 68 Mass. App. Ct. 582, 595 (2007).  The plaintiff therefore "bears a particularly heavy burden" in this appeal.  Id. at 594.
      2.  Adverse possession.  The plaintiffs argue that the trial judge had no rational basis to conclude that they had not established their claim of adverse possession over the disputed area.  "Title by adverse possession can be acquired only by proof of nonpermissive use which is actual, open, notorious, exclusive and adverse for twenty years."  Ryan v. Stavros, 348 Mass. 251, 262 (1964).  See G. L. c. 260, § 21.  The party claiming title bears the burden of proving each of these elements.  See Lawrence v. Concord, 439 Mass. 416, 421 (2003).  "The nature and the extent of occupancy required to establish a right by adverse possession vary with the character of the land, the purposes for which it is adapted, and the uses to which it has been put."  LaChance v. First Nat'l Bank & Trust Co. of Greenfield, 301 Mass. 488, 490 (1938).  Where, as here, the land in question is located in a suburban residential area, the plaintiffs may establish adverse possession by demonstrating they "used the land precisely as the average owner of similar property would use it in a suburban neighborhood populated with single-family homes."  Miller v. Abramson, 95 Mass. App. Ct. 828, 834 (2019).
      To support their claim to the entire strip, the plaintiffs presented photographs depicting their use of the land, as well as the testimony of plaintiff Joyce Aspell, the plaintiffs' children, and a former neighbor.[3] The plaintiffs alleged that they used the entire strip as their own since purchasing the home in 1972, including by gardening and maintaining the lawn and letting their children and dogs play there.  Significantly, they presented evidence of having made more permanent changes to the pool area in the 1980s and 1990s, by installing a swing set and a shed, keeping a boat there, and constructing a fence surrounding the pool.  Considered together, this evidence provided the judge with a rational basis to find, as he did in his answers to the special questions submitted by the parties, that the plaintiffs had established adverse possession over the pool area.  See Peck v. Bigelow, 34 Mass. App. Ct. 551, 556-557 (1993) (collecting cases in which adverse possession was established by changes to property normally associated with ownership, such as "permanent improvements" and "significant changes to the land itself").
      The plaintiffs argue that the judge had no reason to distinguish between the pool area and the disputed area.  However, much of the plaintiffs' evidence supported a claim of adverse possession as to the pool area only.  Aside from a few photographs purporting to show the plaintiffs' typical "mowing pattern," the plaintiffs' proof regarding use of the disputed area was limited to witnesses' testimony about events they observed decades ago, as children and teenagers.  Perhaps understandably, given this timeline, the testimony from these witnesses -- as well as that of plaintiff Joyce Aspell -- contained numerous inconsistencies and ambiguities.  For example, Joyce Aspell testified that the children of Ruth and Thomas Brenneman, the former owners of the defendants' property, played in the disputed area only "occasionally."  However, the plaintiffs' daughter testified she played in the disputed area "all the time with the Brenneman kids," and another witness testified that other children from around the neighborhood commonly played in the area and used the path between the properties.  The judge, as trier of fact, was free to credit some parts of the witnesses' testimony and to disbelieve other parts.  See Buster v. George W. Moore, Inc., 438 Mass. 635, 644 (2003).
      Additionally, Thomas Brenneman testified that he and his son mowed the lawn and raked leaves in the disputed area.[4]  Brenneman used a riding mower and for "a number of years" maintained the area "pretty continuously," specifically to fend off an adverse possession claim.  The judge could have found that this testimony refuted the plaintiffs' proof that their use of the disputed area was exclusive, thus preventing acquisition of title by adverse possession.  See Peck, 34 Mass. App. Ct. at 557 (exclusive use requires "a 'disseisin' of the record owner").
      Citing Pugatch v. Stoloff, 41 Mass. App. Ct. 536, 540-544 (1996), the plaintiffs argue that the Brennemans' purported use was too "sporadic and casual" to interrupt the plaintiffs' adverse possession.  The plaintiffs are correct that not every exercise of ownership is sufficient to interrupt a claim of adverse possession.  See id. at 542 (notifying adverse possessor of survey result insufficient to interrupt adverse possession).  However, it is important to recognize that the Pugatch decision, not dissimilar to the facts here, involved two distinct areas of property.  As to the first area, the issue was whether the claimants had established adverse possession where they "had at times done some pruning or clearing behind the hedge but had not continuously maintained or cultivated" that area.  Id. at 540.  The trial judge characterized this use as "sporadic," and we agreed that it "was not sufficiently pervasive to amount to adverse possession."  Id.  As to the second area, however, the claimants had engaged in "continuous maintenance" of the lawn and landscaping, which was sufficient to establish adverse possession.  Id. at 540-542.  We further held that the record owner's engagement of surveyors, who placed stakes delineating the boundaries of the property "in the woods outside their yard, [which] did nothing to alert the [claimants] that the boundary line ran across their yard," was not sufficiently overt to interrupt the claimants' adverse use.  Id. at 542-543.
      The plaintiffs rely on Pugatch to assert that the Brennemans' occasional lawn maintenance was insufficient to interrupt the plaintiffs' period of adverse possession.  This argument has multiple flaws.  For one, it assumes that the plaintiffs' conduct was sufficient to start the running of the adverse possession period in the first place.  Separate and apart from the conduct of the Brennemans, as discussed above, the shortcomings of the plaintiffs' proof gave the judge reason to find that their conduct on the disputed area was insufficient to even start the period of adverse use.  In other words, where the plaintiffs' purported adverse use was insufficient for purposes of establishing adverse possession, there was no need for the Brennemans, the fee owners, to "interrupt" the sporadic use.  
      In addition, this interpretation incorrectly suggests that the activities required to thwart a claim of adverse possession are the same activities required to establish adverse possession.  In Pugatch, 41 Mass. App. Ct. at 542, we held only that a record owner's reentry must "be done openly on the land, so as to give notice of the interruption."  The record owner need not satisfy all the elements of adverse possession to effect a reentry.  Thus, even if the plaintiffs' use had started the period, the judge reasonably could have found that the Brennemans' activity was not sporadic or occasional, but sufficiently regular and overt to interrupt the plaintiffs' possession.  
      "[T]he credibility of the witnesses rests within the purview of the trial judge" and is entitled to deference.  Weiler v. PortfolioScope, Inc., 469 Mass. 75, 81 (2014).  The evidence permitted the judge to find that the plaintiffs' witnesses were not credible in all respects, to credit Thomas Brenneman's testimony, and to conclude that the plaintiffs had not established the elements of adverse possession over the disputed area.  The judge's decision to deny the plaintiffs' adverse possession claim therefore had a "rational basis in the evidence."  Brewster Wallcovering Co., 68 Mass. App. Ct. at 595.
      3.  Prescriptive easement.  The plaintiffs also argue that the judge lacked a rational basis to deny their claim that they had a prescriptive easement over the disputed area.  To establish an easement by prescription, the plaintiffs must "show by clear proof" that they used the disputed area "in a manner that [was] (a) open, (b) notorious, (c) adverse to the owner, and (d) continuous or uninterrupted over a period of no less than twenty years" (citation omitted).  Houghton v. Johnson, 71 Mass. App. Ct. 825, 835 (2008).  The elements of prescriptive easement are nearly identical to those of adverse possession, except that establishing a claim of easement by prescription does not require evidence of exclusive use.  See Boothroyd v. Bogartz, 68 Mass. App. Ct. 40, 44 n.9 (2007).  Thus, Thomas Brenneman's testimony, which called into question the exclusivity of the plaintiffs' use, had no bearing on the plaintiffs' prescriptive easement claim.
      Still, as with adverse possession, the plaintiffs "bear[] the burden of proof on each and every element" of their prescriptive easement claim.  Boothroyd, 68 Mass. App. Ct. at 44.  The same infirmities that the judge could rationally have relied on in denying the plaintiffs' adverse possession claim as to the disputed area -- the lack of photographic evidence, the unreliable and inconsistent testimony regarding events during the witnesses' childhoods -- could have been viewed as equally fatal to the prescriptive easement claim.  
      In short, the evidence supports the judge's determination that the plaintiffs' evidence did not rise to the level necessary to establish their prescriptive easement claim.  Because "a reasonable inference could be drawn in favor of" the defendants, K & K Dev., Inc., 103 Mass. App. Ct. at 344, quoting Motsis, 96 Mass. App. Ct. at 380, we will not disturb the judgment.  
Judgment affirmed.
footnotes
          
    [1] Joyce M. Aspell.
          [2 ]Judith Raad and Mortgage Electronic Registration Systems, Inc., as nominee for Leader Bank, N.A., and its successors and assigns.
          [3] In their brief, the defendants called attention to the lack of testimony from plaintiff Paul Aspell.  In response, the plaintiffs moved to expand the record to explain why Paul Aspell did not testify at trial.  As we do not draw an adverse inference from the absence of his testimony, we need not decide the motion to expand the record.
          [4] Brenneman's deposition testimony was admitted as an exhibit, with some redactions, by agreement of the parties.