FANNIE F. TINKER *vs.* LENA BESSEL & another.

Berkshire.     October 1, 1912. — November 11, 1912.

Present: RUGG, C. J., MORTON, LORING, BRALEY, & DeCOURCY, JJ.

*Deed. Spring. Adverse Use. Easement,* By prescription, Abandonment.

In a deed conveying an acre of land and providing that the grantee " is to have
with said acre a spring of water northeast of said land near an apple tree,"
the description of the spring is not void for uncertainty if when its language
is applied to the surface of the earth it identifies a particular spring.

A deed, after describing an acre of land conveyed in fee, continued as follows:
" The said [grantee] is to have with said acre a spring of water northeast of said
land near an apple tree, with the right to bring it on to said premises."   The
spring was identified by the description.   *Held,* that the deed conveyed in fee
so much of the land out of which the spring issued as was necessary for the
reasonable use of the spring as well as a right to the water.

In a suit in equity to restrain the defendant from interfering with the plaintiff's
use of a certain spring surrounded by land of the defendant, it appeared that
the defendant's predecessor in title conveyed the spring in fee to the plaintiff's
predecessor in title, that at the time of the conveyance the grantor used the
spring as the sole source of water supply for his house and that his successors
in title, including the defendant, had used it continuously for more than thirty
years and until the filing of the bill, but that the quantity of water thus used was
much less than the capacity or normal flow of the spring.   Nothing was done on
the surface of the land in the vicinity of the spring to indicate that the defendant
or his predecessors in title were occupying it adversely to the title conveyed
to the plaintiff's predecessor in title.   *Held,* that the prescriptive right to with-
draw water from the spring acquired by the defendant and his predecessors
in title was measured by the amount of water actually withdrawn, and that no
title to the entire spring was acquired by them.

In a suit in equity to restrain the defendant from interfering with the plaintiff's
use of a certain spring surrounded by land of the defendant, where it appeared
that the plaintiff claimed title to the spring under a deed which conveyed in fee
the spring and the land necessary for its use to the plaintiff's predecessor in
title, the defendant contended that evidence that a predecessor in title of the
plaintiff asked for and obtained from a predecessor in title of the defendant
permission to connect a pipe with the spring showed that the right claimed by
the plaintiff under the deed had been abandoned.   *Held,* that, even if a title
in fee such as the plaintiff acquired under the deed could be lost by non-user
and abandonment, the question of abandonment was one of fact to be deter-
mined on all the evidence, and that the request to use the spring, if proved,
was to be weighed with all the other circumstances.

RUGG, C. J.   The plaintiff seeks to restrain the defendants
from interfering with her use of a certain spring of water.   The

plaintiff claims ownership of the spring as successor in title to Ira A. Brewer, to whom Gilbert D. Northrup, the defendants' predecessor in title, in 1851, being then owner of both estates, conveyed an acre of land by a deed which contained this language: "The said Brewer is to have with said acre a spring of water northeast of said land near an apple tree, with the right to bring it on to said premises." The case comes before us on appeal from a final decree * in favor of the plaintiff which presents exceptions to the master's report.

The defendants' first contention is that the description of the spring in the deed to Brewer is void for uncertainty. The description is sufficient if it identifies a particular spring when its language is applied to the surface of the earth by one acquainted with the physical features of the neighborhood. There was some conflicting evidence respecting another spring near the one in controversy. The master may have disbelieved so much of the testimony as tended to show that there was another spring. The weight of that which is reported seems against the existence of another spring in any proper sense. But however that may be, without reviewing the evidence in detail, there is no reason for setting aside his definite finding that the spring now in question was the one described in the deed of 1851, nor for reaching the opposite conclusion.

The defendants earnestly contend that the evidence shows conclusively that they have title by adverse use to the fee of the entire spring. The Northrup deed of the "spring of water" conveyed a fee in so much of the land out of which the spring issued as was necessary for the reasonable use of the spring itself, as well as a right to the water. *Proprietors of Mills* v. *Braintree Water Supply Co.* 149 Mass. 478, 484. *Johnson* v. *Rayner,* 6 Gray, 107. *Owen* v. *Field,* 102 Mass. 90, 102. *Davis* v. *Spaulding,* 157 Mass. 431, 435. When the deed was given in 1851 Northrup, the grantor, used the spring as the sole source of water supply to his house, and his successors in title, including the defendants, have used it continuously since then. The quantity thus used is much less than the capacity or normal flow of the spring. Prescriptive title undoubtedly has been established thus to continue to withdraw water to a like extent in the future. *Peck* v. *Clark,*

---

* Made by *Fox,* J. The master was Walter F. Hawkins, Esquire.

142 Mass. 436, 441. The question is whether the further contention, argued in behalf of the defendants, is sound, that as the spring was on their land and they used all the land as they chose and drew all the water they needed from it, and the owner made no attempt to assert his right to it for more than thirty years, they have done all they could do in reason to obtain a complete title to the whole spring by adverse possession, and therefore have acquired such a title. It is the general rule that "prescriptive rights are measured by the extent of the actual adverse use of the servient property." *Middlesex Co.* v. *Lowell,* 149 Mass. 509, 511. *Charles River Bridge* v. *Warren Bridge,* 7 Pick. 344, 449. *Proprietors of Kennebeck Purchase* v. *Springer,* 4 Mass. 416. The same rule applies to rights acquired by adverse possession. This rule may have resulted from several considerations. Title by prescription or adverse possession rests upon the fiction of a lost grant. The definite description, which would be necessary for a valid grant, must be supplied from evidence of actual use. It must be explicit and not left to inference or implication. Moreover, the establishment of such titles is matter of convenience, and has arisen because public policy requires that long continued possession ought not to be disturbed. *Coolidge* v. *Learned,* 8 Pick. 504, 508. But it is contrary to record titles, and begins in disseisin, which ordinarily is wrongful. The acts of the wrongdoer are to be construed strictly and "the true owner is not to be barred of his right except upon clear proof." *Cook* v. *Babcock,* 11 Cush. 206, 210. An adverse use must be under such circumstances of notoriety that the person against whom it is being exercised may be enabled to know about it and resist, if so inclined, the acquisition of the right before the period of limitation has run. The extent of openness and notoriety necessary for the acquirement of title by adverse use varies with the character of the land. *Allen* v. *Holton,* 20 Pick. 458, 465. *Coburn* v. *Hollis,* 3 Met. 125. *Parker* v. *Parker,* 1 Allen, 245. *Richmond Iron Works* v. *Wadhams,* 142 Mass. 569. There is reason for applying the rule with some strictness to property like the fee of a spring of water surrounded by land of another, where the title by adverse user is rested upon withdrawal of a fraction of the yield of the spring by a subterranean pipe and occupation of surrounding land under another and an admitted title. The opportunity of the real owner to ob-

serve an interference with his title is small in such case. So far as appears, nothing was done on the surface of the land in the vicinity of the spring to indicate that the defendants or their predecessors in title were occupying it adversely to the grant from Northrup to Brewer. Title by adverse possession under such circumstances ought not to extend beyond the limits of real occupation. The amount of water actually withdrawn from the spring measures the title acquired. The conclusion from all these considerations is that the defendants fail to show title to the entire spring by adverse use.

It has been urged that the evidence shows that a predecessor in title of the plaintiff asked and received permission from the owner of the servient estate to connect a pipe with the spring box, and that hence an abandonment should have been found. This evidence was not decisive. *Warshauer* v. *Randall,* 109 Mass. 586. *King* v. *Murphy,* 140 Mass. 254. It was to be weighed with all the other circumstances. Commonly the question whether there has been an abandonment is one of fact. *Willets* v. *Langhaar,* 212 Mass. 573, and cases there cited. Speaking accurately, nonuser and abandonment apply only to an easement, and not to a fee such as was conveyed by the deed here in question. It cannot be said that the finding of the master in this respect was wrong.

The defendants offered in evidence an assignment of dower made by commissioners in 1853 to the widow of Gilbert D. Northrup, in which was this paragraph, "Also reserving the right of a spring of water now carried to the dwelling house of the said deceased, and also of another spring of water contracted for by Alonzo Brewer." We do not perceive any error in the exclusion of this report. It does not relate to the spring of Ira A. Brewer. It does not tend to show any larger use of the spring than admittedly has been acquired by prescription by the defendants and their predecessors in title.                     *Decree affirmed with costs.*

*C. H. Wright,* for the defendants.
*C. E. Hibbard,* for the plaintiff.