Tucker, Richard T., J.
In its second amended complaint, the plaintiff, Brooks Pond Conservation Association, Inc. (“BPCA”), as the possessor of property under a lease with BPW, Inc. (“BPW”), seeks a declaration of its rights to said property. The property in issue is a large tract of land and a body of water now known as Brooks Pond, situated in Spencer, North Brookfield, New Braintree, and Oakham, Massachusetts. BPCA asserts that it is a non-profit entity organized for the maintenance and conservation of Brooks Pond and that it is empowered to enact rules and regulations for the use of said pond and to enforce all said restrictions and regulations. BPCA alleges that the defendants, owners of property located at 1 Wash-burn Drive, Spencer, Massachusetts, on the shoreline of Brooks Pond, have violated and continue to violate the BPCA’s rules and regulations pertaining to the pond by their utilization of gas-powered boats, vehicles and snowmobiles on the pond and the surrounding premises.
BPCA seeks a declaratory judgment regarding the use of its property by residents and the enforcement of its rules and regulations. BPCA also claims that the defendants have committed, and continue to commit, trespass, interference with the quiet enjoyment of such land by the BPCA, violation of 323 C.M.R. 3.03 relative to the use of recreation vehicles without the permission of a property owner and breach of contract. BPCA seeks both damages and injunctive relief.
The defendants, in their answer, deny BPCA’s allegations, assert their riparian or littoral rights as owners of property abutting the pond, and challenge BPCA’s asserted title to the pond and its right to restrict their usage of the pond and its surrounding areas. The defendants assert counterclaims for interference with peaceful enjoyment of their property and common-law nuisance.

FINDINGS OF FACT

Upon the testimony presented over the course of the four-day trial that I find to be credible, and upon the review of the numerous exhibits, I recite the facts as found generally, reserving detailed findings for discussion of the issues hereafter.
BPCA is a Massachusetts non-profit corporation. Defendants Albert Starr and Donna Starr (collectively, “Starrs”) live with their two children at property located at 1 Washburn Drive, Spencer, Massachusetts. The Starrs own this property, which is appurtenant to Brooks Pond, by virtue of a deed of Francis M. White, Jr., dated August 13, 2003. Said deed reflects no conditions, rules, regulations or rights of BPW or BPCA to which the property is subject.
BPCA claims it leases all real estate lawfully owned by BPW, that being the entirety of Brooks Pond and some of the surrounding areas. BPW claims this property as the transferee under the following three deeds:
a) Quitclaim deed dated June 6, 1935, from George J. Daniels to BPW and recorded in the Worcester District Registry of Deeds;
b) Quitclaim deed dated June 10, 1935, from Beatrice S. Heywood to BPW and recorded in the Worcester District Registry of Deeds; and
*412 c) Quitclaim deed dated June 22, 1966, from Stanford Schewel, Executor under the will of Mary B. Higgins to BPW and recorded in the Worcester District Registry of Deeds.
The Worcester District Registry of Deeds does not evidence that BPW ever had record title to one hundred percent of the fee in Brooks Pond. BPW has record title to at least a two-thirds interest in Brooks Pond. BPW, at all times relevant herein and for at least twenty years prior to the Starrs obtaining their property, has acted openly and notoriously as if it were the owner of the one hundred percent fee in Brooks Pond.
BPW is the record owner of the property encompassing the dam which created the pond in a-natural basin of Five-Mile River which flows in and out. The dam of the pond on property now owned by BPW was built by Freeman Walker in 1848.
Although record title may only evidence a two-thirds ownership of the bed of Brooks Pond being held by BPW, BPW has acted upon its understanding that it owns the entire pond well before the 1980s. To this end, it has established rules and regulations for the use of the pond that prohibit, among other things, motor boats with gasoline engines and other vehicles with gasoline engines such as snowmobiles and all-terrain vehicles (“ATVs”).
Since 1935, BPW has recorded numerous notices to prevent the acquisition of easements in the Worcester District Registry of Deeds in regard to the Brooks Pond property. Notices were dated and recorded on November 1, 1936; December 1, 1955; June 6, 1975; and April 27, 1995. These notices asserted that BPW was the owner of Brooks Pond and that others may not acquire an easement in the Pond.
BPCA was organized as a charitable entity under Section 501(c)(3) of the Internal Revenue Code. The Association has, pursuant to its lease of all properties from BPW, paid the real estate taxes, managed the pond and its usage, controlled the growth of weeds in the pond, maintained a public beach and paid the yearly premiums for liability insurance. The BPCA, which has not attained one hundred percent membership of the abutting property owners, does not charge members or the public for the use of or the upkeep of the Pond.
The Starrs, who contest the ownership by BPW of the pond and thus any rights of BPCA to regulate the use of the pond, have from time to time violated the rules of BPCA by operating gas-powered boats on the pond and/or ATVs or snowmobiles on the ice of the pond or surrounding areas. Although at times the Starrs refrained from such activities under agreements with the BPCA, generally the Starrs have not recognized any rights of the BPCA to regulate their use of the pond, asserting, among other things, that they have rights as part-owners of the pond, riparian or littoral rights to the pond and/or rights to utilize the pond as a “Great Pond” of the Commonwealth.
It was stipulated at trial that BPW owns the Brooks Pond dam and at least a two-third interest in the Pond itself.

DISCUSSION AND RULINGS OF LAW The “Great Pond” Issue

The Starrs claim the right to use Brooks Pond as they choose, free of any restriction by the rules and regulations of BPCA, for a number of reasons. They claim this right as being owners of property appurtenant to the pond, which they claim is a Great Pond. If Brooks Pond is in fact a Great Pond, it is owned and held in trust by the Commonwealth of Massachusetts for the use and benefit of its citizens. As such, the Starrs argue, the pond cannot be “owned” by any private party, including BPCA, and it follows that its use cannot be regulated by the BPCA.
A Great Pond is defined as “a natural pond the area of which is twenty acres or more.” G.L.c. 131, §1. A Great Pond, except as otherwise restricted “shall be for the purpose of hunting or boating thereon and shall ... be open to all inhabitants of the Commonwealth for fishing purposes ... All persons shall be allowed reasonable means of access to such ponds for” such purposes. G.L.c. 131, §45; see also, Lopes v. Peabody, 417 Mass. 299, 305 n.11 (1994) (“Public rights in the Commonwealth’s great ponds are well established. Colonial ordinances granted every householder a right of ‘free fishing and fowling’ in great ponds of ten acres or more”).
Although G.L.c. 131, §1 defines a Great Pond as having natural acreage of twenty acres or more, witnesses as well as other materials admitted at trial referred to Great Ponds as being more than ten acres in their natural state.[1] Under either definition utilized, I find Brooks Pond not to be a Great Pond.
Testifying on this issue for the plaintiff was Jeremy O’Connell, Esquire and Robert Daylor, Professional Engineer. Both rendered expert opinions that Brooks Pond was not a Great Pond since, in its natural state and prior to manmade activity, the pond was less than ten acres.
Mr. Daylor relied on an 1830 Map of North Brook-field from Actual Survey by Bonum Nye and the 1834 Map of Spencer, Mass. Surveyed & Drawn by William Baldwin. Although some earlier drawings exist, Mr. Daylor testified that these were the two most accurate and critical maps showing Brooks (a/k/a North or Johnson) Pond. From these maps, Mr. Daylor measured the total area of the pond to be 8.24 acres.
Mr. Daylor further testified to the earliest reference to a dam creating the pond on Five-Mile River as being 1761. As the result of Mr. Daylor’s research of the book entitled History of North Brookfield, Massachusetts, by J.H. Temple, published by the Town of Brookfield in 1887, Mr. Daylor related that a larger dam was built in 1848 (i.e., after the 1830 and 1834 maps showing Brooks Pond to be the 8.24 acres) which increased the *413 size of the pond in 1848. Mr. Daylor concluded that, in its natural state, as calculated based on the surface area of lands lying below the natural water mark, Brooks Pond was not in excess of ten acres and thus not a Great Pond.
Jeremy O’Connell, an attorney and title examiner of Worcester County properties for many years, also testified that in his opinion Brooks Pond is not a Great Pond. He referred to the survey made by Bonum Nye in 1834 which shows Brooks Pond to be 8.24 acres at that time. He concluded that, in its natural state, the pond was less than ten acres, and even after the first dam built in 1761 continued to be less than ten acres in size.
Additionally, there was little dispute that the Department of Environmental Protection, which is charged under 3.10 C.M.R. 9.10(b) to publish an inventory of Great Ponds, has not listed Brooks Pond therein.
Defendants’ expert, Attorney Peter Adams, although testifying on the issue of ownership of the pond, did not render opinions on the issue of whether or not Brooks Pond was a Great Pond. Irene Delbono, a Planner with the Executive Office of Energy and Environmental Affairs, acknowledged that Brooks Pond was not listed by the Department of Environmental Protection as a Great Pond and agreed that a Great Pond is determined by its size in its natural state. Ms. Delbono testified that she could not state with any confidence, without doing further exhaustive research, whether Brooks Pond was or was not a Great Pond.
Based upon the testimony of plaintiffs’ witnesses, which I credit, and on the lack of listing of Brooks Pond as a Great Pond by the Department of Environmental Protection, I find that Brooks Pond is not a Great Pond as that term is used in G.L.c. 131, §1 or G.L.c. 91, §35. Despite the fact that it is now approximately one hundred and seventy acres and located at the intersection of and within four separate towns — Spencer, North Brookfield, New Braintree and Oakham — it is not a Great Pond, since it was not in excess of ten acres in its natural state.

The “Title" Issue

The parties addressed the issue of whether BPW is the owner of Brooks Pond principally through their expert witnesses. Testifying for the plaintiffs was Attorney Jeremy O’Connell; for the defendant, Attorney Peter Adams. Both are title examiners and are preeminent within the real estate bar in the Worcester area. Both traced the line of title from a deed of James Draper to Jonas and Thomas A. Harwood of April 21, 1828. Through various conveyances thereafter, both examiners relate that by deed of January 22, 1864, Amasa Walker and Freeman Walker, as owners of the entire interest, conveyed a one-third interest to Warren G. Fay to Brooks Pond, then known as the “reservoir” property. The deed states that it is “the intention of the grantors [Amasa Walker and Freeman Walker] to convey to grantee [Warren G. Fay] the premises described in this deed in such a manner that the said Fay shall own one-third part and Amasa Walker one-third part and Freeman Walker one-third part in common.” Both examiners agree that this conveyance in 1864 resulted in these three parties owning one-third each of the property on which the pond bed and surrounding areas now known as Brooks Pond was situated.
It is following this conveyance that the examiners diverge as to their opinions and conclusions derived from the records at their disposal. O’Connell testified that by deed of September 18, 1879, Freeman Walker conveyed his one-third interest in the “reservoir” pond to Richard Sugden. In a deed dated one week later, September 25, 1879, Richard Sugden received a conveyance by Warren G. Fay of Fay’s two-thirds interest in the “reservoir” pond. Thus, by September 25, 1879, it appears that Richard Sugden had purchased the entire interest in the reservoir (Brooks Pond). Indeed, upon Sugden’s death, his devisee, EmmaSagendorph, • inherited this property and later conveyed to Lucien A. Taylor without limitation all her right to Brooks Pond, a/k/a Reservoir Pond, by deed dated January 28, 1898. There is no indication in these conveyances that at any time Richard Sugden or after his death, Emma Sagendorph, had title to anything less than the entire interest in and to Brooks Pond.
The problem exists with Amasa Walker’s one-third interest in the reservoir resulting from the January 22, 1864 conveyance. After that conveyance, Warren G. Fay and both Walkers each owned a one-third interest. Thereafter, Freeman Walker conveyed his one-third interest to Sugden and, following this, the next week, Fay conveyed a two-third interest to Sugden on September 25, 1879. The record chain of title, however, is missing a conveyance of Amasa Walker’s one-third interest to Warren G. Fay giving him the two-third interest that he conveyed to Sugden by deed of September 25, 1879.
O’Connell researched the available information from other sources and reached his expert conclusion that an unrecorded deed exists from Amasa Walker to Warren G. Fay of Walker’s one-third interest in the reservoir. O’Connell examined the probate papers of Amasa Walker. Amasa Walker’s will made very specific disposition of his property, including all deed references. It did not dispose of the Brooks Pond Reservoir which, in O’Connell’s opinion, supports the inference that the Brooks Pond Reservoir had been conveyed during Amasa Walker’s lifetime.
Also, O’Connell studied the available records concerning Richard Sugden. He found that Sugden was one of the wealthiest citizens in the area at the time. O’Connell believes it likely that when Sugden purchased the Brooks Pond Reservoir in September 1879 *414 from Freeman Walker and Warren G. Fay, he knew that he was purchasing the entire interest in the pond. Thereafter, Sugden died and Emma Sagendorph inherited this property. She conveyed the entire interest as stated in January 1896. The chain of title continues until June 6, 1935, when George J. Daniels conveyed this interest in the entire pond property to BPW.
It was O’Connell’s opinion that BPW currently has title to Brooks Pond, subject to the issue of the missing deed of the one-third Amasa Walker interest described above.
While not contesting directly any of Attorney O’Connell’s findings, the defendant’s expert, Attorney Peter Adams, testified to greatly divergent .conclusions. Attorney Adams testified that although some of the descriptions in the old deeds are problematic, with some question remaining as to the precise land over which water of the pond flowed at various times, he conceded that it was at least arguable that the prior deeds did convey the bed of what is now Brooks Pond.
Attorney Adams took much greater issue with the assertion that a missing deed exists conveying the “missing” one-third interest of Amasa Walker in the pond property. This deed would have been from Walker to Warren G. Fay and dated between January 22, 1864, and September 25, 1879. As both experts agree, the record title to the property does not include any such deed, and Attorney Adams is not prepared to conclude that an unrecorded deed exists. In his opinion, based upon the lack of records of the Registry of Deeds, this one-third interest was not deeded out by Amasa Walker, and thus passed under the residuary clause of Amasa Walker’s will to Francis Walker and then to Exine Walker or her heirs and assigns. He knows of no dominion or control of the property executed by Francis or Exine Walker, or any deeds from them purporting to convey any portion of the pond thereafter. His opinion is, however, that title to one-third of the property remains in Exine Walker, her heirs and assigns, with the exception of flowage rights which are owned by BPW as a consequence of the prior dam deed. He does not know who, if anyone, are the heirs or assigns of Exine Walker.
Both Attorneys O’Connell and Adams referred to the attempt by Attorney Charles A. Merrill, a Massachusetts Land Court Examiner, to resolve the issue of the record title to the pond property in 1906. After a tremendous amount of work, he issued his report in this matter, Quaboag Mfg. Co., Petitioner, Land Court No. 1517, in November 1906, concluding that he could not solve the title problem. This petition remained open for many years. After having been marked “inactive” on June 2, 1953, the petition of Quaboag Mfg. Co. to confirm and register its land was dismissed, without prejudice, on January 12, 1972, for lack of prosecution.
Thus, the issue of BPWs interest and rights in and to Brooks Pond rests solely on the existence of a missing deed. While Massachusetts jurisprudence recognizes “[t]he slippery slope of inferring the existence of a lost, unrecorded deed” and that to do so “may well be perilous,” it is clear that to “refuse to infer the existence of such a deed could also have grave consequences ...” Poor v. Lombard, 72 Mass.App.Ct. 719, 721 (2008). Thus, Massachusetts courts have “long found the practice [of inferring missing grants] proper.” Id., citing White v. Loring, 24 Pick. 319, 41 Mass. 322-23 (1837). Some early decisions tied the legal presumption of a “lost grant” to the establishment of adverse possession. Tinker v. Bessel 213 Mass. 74, 76 (1912); Gayetty v. Bethune, 14 Mass. 49, 55 (1817). Other decisions treated claims of lost deeds as being distinct and separate from claims of adverse possession. Ingalls v. Newhall, 139 Mass. 268, 269 (1885).
The current state of the law is that “a lost, unrecorded deed may be inferred even in the absence of proof of adverse possession.” Poor, 72 Mass.App.Ct. at 721. This was demonstrated in Poor by the Appeals Court’s affirming of a Land Court decision that confirmed plaintiffs’ title to property based upon a finding that a lost, unrecorded deed existed. Id. at 720-22. The Land Court inferred the earlier missing deed of one Paine to Jacob Rich upon the 1911 deed of Rich to a third party (DeChamp) which purported to convey the Paine parcel.[2] Also, the Land Court relied on an 1899 deed of neighboring property which referred to Rich as an abutter. Id. at 720, 722 n.6.
The mere existence of a “hole” in one’s chain of title, however, does not raise by itself an inference of a lost grant. While circumstantial evidence may suffice to establish a missing record of a conveyance, White, 41 Mass. at 322-23, only a probability of the missing grant, not a mere possibility, will suffice under the law. Cunningham v. Chapin, Jr., 2008 WL 794284 (Mass. Land Ct.); Donoven v. Thanos, 1991 WL 11258276 (Mass. Land Ct.). Lengthy period of possession by a party and proof of circumstances which can only be reasonably understood on the assumption that a conveyance has been made, have supplied the evidence upon which the finding of a lost, unrecorded deed may be presumed. White, 41 Mass. at 322.
The evidence submitted by plaintiffs to prove the existence of the missing Walker grant to Fay included the 1879 deed of Fay to Sugden of Fay’s “two undivided third parts of all the real estate which is mentioned and described in a deed from Freeman Walker to said Richard Sugden dated the eighteenth day of September A.D. 1879 . . .” The deeds of Walker and Fay to Sugden purporting to convey a one-third interest and two-third interest respectively in the pond property, dated within a week of one another, implies that Sugden was purchasing full ownership. Also the consideration recorded as having been paid by Sugden, $7,700 for Walker’s one-third interest and $15,500 for Fay’s two-thirds interest, supports such an inference. *415 Attorney O’Connell’s conclusions that Sugden, being a wealthy businessman, would most likely have assured himself of the interest of both Walker and Fay before purchasing is reasonable.
Thereafter Sugden acted as if he did own the entirety of the pond,[3] as did his devisee upon his death, Emma Sagendorph. She later conveyed her entire interest in Brooks Pond without limitation.
Attorney O’Connell also points to a deed of Exine W. Walker, widow of a devisee of Amasa Walker, dated February 9, 1903, of property bounded by the high-water mark (shoreline) of Brooks Pond, which makes no attempt to convey any portion of the Pond’s bed or any rights in it. Of course, the will of Amasa Walker made no reference to any remaining ownership of a portion of Brooks Pond and no document of his heirs thereafter purports to establish any such interest.
Furthermore, BPW has now exercised rights of ownership to the pond since the 1930s without challenge, with the present exception, to its title. Most importantly, Sugden’s purchase of Fay’s two-third interest, Amasa Walker’s will, Emma Sagendorph’s transfer, and the lack of objection over the years by any of Amasa Walker heirs, are all “circumstances, which can be accounted for only on the assumption of a [missing] conveyance.” White, 41 Mass. at 322. I find that a missing deed of Amasa Walker conveying his one-third interest in the Brooks Pond property to Warren G. Fay exists. Accordingly, I find that ownership of Brooks Pond is vested, and has been vested for over thirty-five years, in BPW.

The “Trespass” Issues

Plaintiff brings a number of counts alleging that defendant’s use of the Pond with gas-powered machines, water craft and vehicles violates BPCA rules and regulations. These counts for trespass, interference with quiet enjoyment, violation of323 C.M.R3.03 and breach of contract all seek injunctive relief in the form of compliance with the rules and regulations, as well as damages.[4]
In its breach of contract count, plaintiff alleges defendants are in breach of an “Agreement of the Parties” dated March 4, 2004. Upon pretrial motion, this court found that the Agreement was entered into by both BPCA and the Starrs in lieu of the court’s issuance of a preliminary injunction. In a post-trial ruling upon plaintiffs complaint for contempt, the court ruled that “a Preliminary Injunction shall issue nunc pro tunc to the date of the Agreement of the Parties’ dated March 4, 2004" and incorporated the terms of the Agreement as the injunction. Plaintiff seeks in its breach of contract count, as well as its other counts, that the defendant be personally enjoined from further violation of the BPCA’s rules and regulations and damages.
Plaintiff has not proven by a preponderance of the evidence money damages incurred as a result of a breach of the prior Agreement or of the preliminary injunction, or for the violation of any of the other individual counts of its complaint.
Much credible evidence was produced, however, to establish that the defendants have violated the rules and regulations against the use of gas-powered engines on the pond or property leased by BPCA. This evidence was sufficient to prove, and I find, that unless defendants are enjoined, plaintiff is likely to continue to suffer irreparable harm to its property.

ORDER

1. I find, adjudge and declare that Brooks Pond is not a “Great Pond” as that term is used in the statutes of the Commonwealth of Massachusetts or the regulations issued thereto;
2. I find, adjudge and declare that title to Brooks Pond is vested in BPW, Inc., subject only to the missing deed of Amasa Walker to Warren G. Fay of Walker’s one-third interest in Brooks Pond, dated sometime between January 22, 1864 and September 25, 1879;
3. I find, adjudge and declare that Brooks Pond Conservation Association, Inc., as lessee of the Brooks Pond from BPW, Inc., has the right and standing to enact and enforce reasonable rules and regulations governing the use of Brooks Pond by the public and the owners of property appurtenant to the Pond. Brooks Pond Conservation Association, Inc., is entitled to enforce said reasonable rules and regulations in the manner and degree allowed by law;
4. The defendants Albert Starr, Donna Starr, Jacob Starr and Britley Starr ppa Albert Starr are permanently enjoined from violating Brooks Pond Conservation Association’s reasonable rules and regulations by using gas-powered machines, watercraft or vehicles upon the water, or ice of Brooks Pond, or upon the property leased by Brooks Pond Conservation Association, Inc.;
5. The defendants’ counterclaims are dismissed.

 Under G.L.c. 91, §35 relative to Waterways, a Great Pond is defined as “ponds containing in their natural state more than ten acres of land ...”

Poor’s title in the subject property ran directly thereafter through a number of conveyances originating with the 1911 deed of Rich to DeChamp.

Although no records of Sugden’s acts of possession of the pond during his lifetime exist, there are no records of any other source that challenge his possession or ownership.

Although “damages” are not specifically requested, a liberal reading of the complaint and its prayers for “costs and attorneys fees and such other and further relief as this Court deems just and proper,” permits the interpretation that damages are sought.