Henry, Bruce R., J.
In this matter the plaintiffs, Samuel and Frances Winiker, seek adverse possession of approximately 2616 sq. ft. of the property of the defendant, Kimberly Bell. Ms. Bell filed a counterclaim asserting trespass by the Winikers in that a portion of their driveway and a part of a retaining wall encroach on her property. A jury-waived trial took place over four days and I viewed the properties involved. The parties have submitted post-trial requests for findings of fact and rulings of law.
Based on the credible evidence at trial, I find that the Winikers have not established their ownership of the disputed property by adverse possession and that their driveway and retaining wall do encroach upon Ms. Bell’s properly.
Findings of Fact
Based on the credible evidence at trial and the reasonable inferences therefrom, I make the following findings of fact.
1. In May of 1964, Samuel Winiker purchased the property at what is now numbered 505 and 523 Norfolk Street in Holliston, Massachusetts. In 1964, Mr. Winiker subdivided the property into two lots, designated as Lot X and Lot Y on a Plan of Land recorded in the Registry of Deeds in March of 1965. Lot Y had a house on it, Lot X did not. The Winikers built a home on the property at 505 Norfolk Street. Currently, Lot X is the properly owned by the Winikers and is numbered 505 Norfolk Street (the Winiker Property) and Lot Y is the property owned by Ms. Bell and is numbered 523 Norfolk Street (the Bell Property).
2. The area in dispute is shown on Exhibit 14. That diagram was drawn based on the instructions of Mr. Winiker.
3. By a deed dated June 21, 1967, Samuel Winiker transferred ownership of the property at 523 Norfolk Street to Jessie Kimball. Frances Winiker, as Samuel’s wife, released any interest she may have had in the property to Ms. Kimball. Samuel Winiker retained the property at 505 Norfolk Street and in 1985 he deeded it to himself and Frances as tenants by the entirety. They have continued to own the property at 505 Norfolk Street and to reside there to the present.
4. By a deed dated October 17, 1972, Jessie Kimball transferred ownership of the property at 523 Norfolk Street to Robert and Daria Amaral.
By a deed dated May 2, 1977, the Amarals transferred ownership of the property at 523 Norfolk Street to John and Janice McDevitt.
By a deed dated July 20, 1983, the McDevitts transferred ownership of the property at 523 Norfolk Street to Juan and Rosemary Ortega.
By a deed dated June 11, 1986, the Ortegas transferred ownership of the property at 523 Norfolk Street to Kathleen Carter.
By a deed dated August 5, 1992, Kathleen Carter transferred ownership of the property at 523 Norfolk Street to Donna Coppola and James Jackson.
By a deed dated November 30, 1998, Donna (Coppola) Jackson and James Jackson transferred ownership of the property at 523 Norfolk Street to Kimberly Bell. Ms. Bell has owned that property since then.
5. At some point beginning in the early 1970s, after the transfer of the Bell property to Ms. Kimball in 1967, Frances Winiker maintained a garden and a berry patch which was, at least in part, on the area now in dispute. While Mrs. Winiker was unable to show precisely where the garden had been, I credit her testimony that at least some portion of the garden and the berry patch were on the Bell property. I credit that Mr. Winiker mowed and cared for at least part of the property in dispute. There was no credible testimony that Mr. Winiker maintained the area of the pine trees at the Norfolk Street side of Ms. Bell’s property at anytime.
6. There was no fence dividing the two properties in question and no effort was made by either Ms. Kimball or the Winikers to exclude anyone from the disputed property. There was a grove of several large pine trees at the front of the two properties on the Norfolk Street side.
7. At some point, trees were planted by the Winikers on or near the property in dispute. Based on the inconsistent dates testified to by Mrs. Winiker as to when the trees were planted (at trial she stated they were planted around 1972; at her deposition she had stated they were planted in 1965) and on Mr. Winiker’s lack of recall as to when the trees were planted, I find that the plaintiffs have not proven by a preponderance of the evidence when those trees were planted and I do not rely on that information in reaching my conclusions.
*531 8. After the Bell property was transferred to the Amarals in 1972, Mrs. Winiker continued to have a garden and a berry patch which extended, at least in part, onto the disputed property. Mr. Winiker continued to mow and to care for at least a portion of the disputed property after the transfer to the Amarals.
9. In the time frame of 1974-1976, a family room addition was built by the Winikers. The Winikers occasionally used some of the property in question to park equipment and materials during the construction phase.
10. During the time that the Amarals owned the Bell property, there were no fences erected and neither the Amarals nor the Winikers took steps to exclude anyone from the disputed property. Neighborhood children, including the Winiker children, played on the disputed area.
11. After the McDevitts bought the Bell property in 1977, Mr. McDevitt mowed and cleaned the lawn up to wherever it had not been mowed by Mr. Winiker. In his description of the areas which he mowed, Mr. McDevitt pointed on Exhibit 20 to areas within the disputed portion of the Bell property. While I find that Mr. Winiker continued to mow and care for at least some part of the area in dispute, I find that Mr. McDevitt also did so during the years that he owned the Bell property. The extent of the area maintained by Mr. Winiker was not established by a preponderance of the evidence. There was no clearcut delineation of where the property line was and there was no fence or wall between the two properties. There was no evidence that either the Winikers or the McDevitts took steps to exclude anyone from the disputed properly. I accept the testimony of the McDevitts that they had a garden and berry patch of their own and did not observe a garden or berry patch being tended by Mrs. Winiker during the time that they owned the Bell property. Based on my visit to the property, the McDevitts would more likely than not have been able to observe a garden or berry patch, and whoever was tending them, if either had existed at the time.
12. While the McDevitts lived on the Bell property, on the Norfolk Street side of the properties were six or so pine trees. The McDevitts stored wood in that area. It was not an area which had grass which required mowing and there was no credible evidence that the plaintiffs cared for that part of the property in question.
13. The Ortegas purchased the Bell property in 1983. Mr. Ortega measured off the lot lines himself and proceeded to remove brush and to clean up the property, including at least part of the disputed area. He never observed Mr. Winiker mowing the lawn in the area of the now-disputed property which he believed was his. Mr. Ortega mowed that portion of the disputed area, which remained without fencing or walls. On two occasions Mr. Ortega held a pig roast in his back yard. He and his guests utilized some of the area which is now in dispute, including a rock which forms part of the boundary line between the properties and which is visible in Exhibit 17.1 accept Mr. Ortega’s testimony that there was no garden on the disputed area which was tended by Mrs. Winiker at the time the Ortegas lived on the Bell property. At the portion of the disputed area which was closest to Norfolk Street were the previously-noted pine trees. Mr. Ortega stacked firewood in that area. That was not an area in which Mr. Winiker mowed or performed maintenance.
14. While I credit that Mrs. Winiker had at some time maintained a garden and a berry patch that extended into some portion of the disputed area, that area was not established by a preponderance of the evidence at the trial before me. I do not credit the testimony that the garden existed until the late 1980s and I accept the testimony of the McDevitts and of Mr. Ortega that they did not see a garden being maintained by Mrs. Winiker during the years that they owned the Bell property. I find that any use of the Bell property by Mrs. Winiker for the maintenance of a garden and a berry patch did not last for a twenty-year period.
15. Kathleen Carter purchased the Bell property in 1986. She could not say where the property line was, but indicated that the area, in question was an open area without fencing or any other delineation of the property lines at that time. She mowed what area needed mowing. I accept that Mr. Winiker mowed at least some of the disputed area, but I find that the plaintiffs did not establish by a preponderance of the evidence where that area was. At some point while she lived on the Bell property, Mr. Winiker approached Carter and inquired about buying some of her property at the back. Ultimately, nothing came of that discussion and no part of her property was sold.
16. Beginning in 1988, the Winikers built a freestanding garage on their property. The final inspections and approvals for the garage are dated in September 1991. The design of the garage is such that it has an odd angle, which appears clearly to have been done to accommodate the lot line between the Bell and Winiker properties. I infer that Mr. Winiker was aware of where the lot line was at that time and that the garage was designed to take that lot line into account. At times during the construction of the garage construction equipment and materials were stored or placed on portions of the disputed area. Some of the pine trees on the Norfolk Street side of the Winiker property were removed by the Winikers for the construction of the garage and driveway.
17. The driveway to the garage and the retaining wall were probably begun in the spring of 1992 and everything was completed within a couple of years. When the driveway and the retaining wall were built, I infer that Mr. Winiker was aware of where the lot line was. A portion of the driveway and of the retaining wall encroach into the Bell property. The square footage for the area of encroachment is approximately 250 sq.ft. *532 At times, Mr. Winiker would place on a portion of the disputed property snow that he had plowed from his driveway.
18. In 1993, James Jackson purchased the Bell property. He acknowledged that he never really knew where the property line was, but that he would mow the grass which needed to be mowed. There were times when he felt that whoever was mowing the Winiker property was overly aggressive with the mowing, but he did not object to having someone mow his lawn. The disputed area in the back was open and always available to him and he would use it occasionally for cookouts and for games of Frisbee or for ball games. Sporadically, a car would be parked on the property at the back near a tree.
19. At the front of the properly along Norfolk Street were some pine trees which Mr. Jackson had removed in 1997.
20. Bell purchased the property in 1998 and lived there until 2002. At some point in 1999, Mrs. Winiker gave Bell permission to cross the Winiker property to walk her dog to a nearby park. From 2002 through December of 2007, Bell lived out of state. Her home was vacant at times and she had tenants living there at other times. For most of the time she was away, her current husband, who owns a landscaping business, lived at the property and took care of the yard work. For some of the year 2002, Bell asked Mr. Winiker if he would mow her lawn when he did his and he agreed to do so. In 2007, Bell again requested Mr. Winiker to mow her lawn when he did his and again he agreed to do so.
21. At some point before 2008, Bell had some arborvitae planted along what she assumed to be the property line. Those were removed in 2007.
22. In April of2008, Bell had a properly survey done and ran a string along the property line with the Winiker property. She planted spruce trees in May of 2008, while the Winikers were away in Florida. When they returned, Mrs. Winiker and she had a discussion about the trees and the disputed area. In a letter dated June 14, 2008 (Exhibit 13), Bell thanked the Winikers for mowing her lawn and watching her house and asserted clearly her intent to claim the now-disputed area as hers. As she informed the Winikers in that letter, Bell had a fence erected on her side of the property line. Until that point none of the owners of the Bell property had excluded the Winikers from their usage of the property in question and the Winikers had never sought or received permission to use the properly in the ways that they did.
Rulings of Law
1.To prove adverse possession, the Winikers must prove by a preponderance of the evidence that they made use of the disputed portion of the Bell property without permission, and that the nonpermissive use was actual, open, notorious, exclusive, and adverse for a period of at least twenty years. Lawrence v. Concord, 439 Mass. 416, 421 (2003); Kendall v. Selvaggio, 413 Mass. 619, 621-22 (1992).
2. The plaintiffs must prove that the owners never granted them permission to use the property and never objected to the plaintiffs use of the property. Kendall v. Selvaggio, 413 Mass. 619, 621-22 (1992).
3. A person makes “actual use” of property if he/she uses, controls, or makes changes upon the property similar to the uses, controls, or changes that are usually associated with ownership. Peck v. Bigelow, 34 Mass.App.Ct. 551, 556 (1993). In evaluating whether the use was “actual,” the focus of the inquiry is the extent of control and dominion exercised by the claimant. Shaw v. Solari, 8 Mass.App.Ct. 151, 156 (1979) (“actual use and enjoyment of the property as the average owner of similar property would use and enjoy it, so that people residing in the neighborhood would be justified in regarding the possessor as exercising the exclusive dominion and control incident to ownership”). See also Pugatch v. Stoloff, 41 Mass.App.Ct. 536, 540-44 (1996) (claimants failed to acquire title by adverse possession to a large area of the plaintiffs lot consisting of overgrown, untended woodland, but did acquire title by adverse possession to a smaller area where they had maintained a lawn, a hedge, and a retaining wall); MacDonald v. McGillvary, 35 Mass.App.Ct. 902, 902-03 (1993) (maintenance of a lawn upon a narrow disputed strip of land was sufficient by itself to support claim of adverse possession); Conte v. Marine Lumber Co., 66 Mass.App.Ct. 505, 509 (2006) (clearing trees, buiying rubbish, planting rye grass, and digging loam could suffice in intensity to qualify for adverse possession despite the lack of fencing or the construction of buildings). Sporadic use of property — acts of possession that are “few, intermittent and equivocal” — will not support a determination that the claimant has asserted dominion and control sufficient to assume title by adverse possession. Pugatch v. Stoloff, 41 Mass.App.Ct. 536, 540 (1996). In contrast, acts of possession that are “sufficiently pervasive” will support a determination of adverse possession. Id.
4. To be open, the plaintiffs’ use of the property must be made without attempted concealment. To be notorious, the plaintiffs’ use must be known to someone who might reasonably be expected to communicate his/her knowledge to the owner if the owner maintained a reasonable degree of supervision over the property. It is not necessary that the use be actually known to the owner for it to be notorious. Boothroyd v. Bogartz, 68 Mass.App.Ct. 40, 44 (2007).
5. To prove exclusive use of the property, the plaintiffs must show that they excluded the owners and all other persons to the same extent that an owner would have excluded them. Peck v. Bigelow, 34 Mass.App.Ct. 551, 557 (1993).
*533 6. To prove that the plaintiffs’ possession is adverse, they must show that the nature of their use of the property and the resulting occupancy of it is sufficient to indicate that they possess the properly under a claim of right. It is the plaintiffs’ conduct with respect to the use of the property, not their state of mind, which governs whether they possess the properly adversely. Tottman v. Malloy, 431 Mass. 143, 146 (2000); Kendall v. Selvaggio, 413 Mass. 619, 623-24 (1992).
7. The plaintiff must prove unbroken possession of the property for a consecutive twenty-year period. Kershaw v. Zecchini, 342 Mass. 318, 321 (1961).
8. A claimant of title by adverse possession must describe the land adversely possessed in an exact and definite matter. 3 Am. Jur.2d Adverse Possession §294, at 328 (2002). See 2 C.J.S. Adverse Possession §261, at 692 (2003) (“A claimant of title by adverse possession must further show the extent of their possession, the exact property which was the subject of the claim of ownership”). Massachusetts courts appear to have adopted this requirement in 1912. See Tinker v. Bessel, 213 Mass. 74 (1912). There the Supreme Judicial Court stated that ”[t]he definite description [of adversely possessed land], which would be necessary for a valid grant, must be supplied from evidence of actual use. It must be explicit and not left to inference or implication.” Id. at 76. See also Stone v. Perkins, 59 Mass.App.Ct. 265, 268 (2003) (in the analogous context of prescriptive easements, a claimant must show a definite location of the prescriptive easement on the servient properly).
The Supreme Judicial Court has also stated that ”[t]he definite description [of the adversely possessed land] . . . must be supplied from evidence of actual use.” Tinker, 213 Mass. at 76. The only other requirement is that this evidence must be sufficiently definite to support a description in the judgment upon which a metes and bounds measurement could be performed. See Masa Builders, Inc. v. Hanson, 30 Mass.App.Ct. 930, 931 (1991). Massiocchi v. Utenis, 73 Mass.App.Ct. 1121 (2009) (1:28 Decision).
9. A landowner is ordinarily entitled to mandatory equitable relief to compel removal of a structure significantly encroaching on his land, even though the encroachment was unintentional or negligent and the cost of removal is substantial in comparison to any injury suffered by the owner of the lot upon which the encroachment has taken place. Peters v. Archambault, 361 Mass. 91, 92 (1972). See also Goulding v. Cook, 422 Mass. 276, 277-78 n.3 (1996). There is a narrow exception to the general rule favoring removal in rare and exceptional cases where an order of removal would be oppressive and inequitable. Id. at 277 n.3. In determining whether the circumstances of a given case justify overriding the landowner’s ordinary entitlement to an injunction, a court must balance the equities by assessing the hardship of removal to the defendant relative to the injury to the plaintiff in light of such factors as (1) the size of the unlawful encroachment, i.e., whether it is de minimis, Capodilupo v. Vozzella, 46 Mass.App.Ct. 224, 226 (1999); (2) whether it was made innocently; (3) whether the cost of removal by the defendant would be greatly disproportionate to the injury to the plaintiff from its continuation; and (4) whether the substantial rights of the owner may be protected without recourse to an injunction. Goulding, supra at 277 n.3. Brandao v. DoCanto, 80 Mass.App.Ct. 151, 158-59 (2011).
Discussion
Plaintiffs’ Adverse Possession Claim
The plaintiffs have not established that they own the disputed property by adverse possession. As noted above, to prevail on such a claim the plaintiffs must establish that they made use of the disputed portion of the Bell property without permission, and that the nonpermissive use was actual, open, notorious, exclusive, and adverse for a period of at least twenty years. Lawrence v. Concord, 439 Mass. 416, 421 (2003); Kendall v. Selvaggio, 413 Mass. 619, 621-22 (1992).
Area of Disputed Property
As noted above, the plaintiffs must show the extent of their possession, the exact property which was the subject of the claim of ownership. See Tinker v. Bessel, 213 Mass. 74 (1912). There the Supreme Judicial Court stated that “[t]he definite description [of adversely possessed land], which would be necessary for a valid grant, must be supplied from evidence of actual use. It must be explicit and not left to inference or implication.” Id. at 76. While the plaintiffs have presented a plan with a pie-shaped area delineated as that part of the property which they are claiming (Exhibit 14), the evidence did not support their claim.
The area of Mrs. Winiker’s garden and berry patch was not well delineated. The extent of and the location of those areas was not established by a preponderance of the evidence. Even if I accept that Mr. Winiker mowed the disputed area up to the straight line shown on Exhibit 14, which I do not find, there was a grove of trees at the front of the property which I find was not maintained by the plaintiffs. While the plaintiffs have presented a plan which designates the portion of the Bell property which they are claiming by adverse possession, I do not accept that plan as being the area over which they did exert at least some control for some periods of time. The plaintiffs have not met their burden of demonstrating the precise area which they adversely possess.
Non-Permissive Use
The plaintiffs must prove that the owners never granted them permission to use the property and never objected to the plaintiffs’ use of the property. Kendall v. Selvaggio, 413 Mass. 619, 621-22 (1992). The plaintiffs have met that burden. They never sought permission to use the disputed portion of the *534 Bell property and until Ms. Bell did so in 2008 no one objected to their use of the property in question.
Actual Use
The plaintiffs must also establish that they made actual use of the disputed properly. A person makes “actual use” of property if he/she uses, controls, or makes changes upon the property similar to the uses, controls, or changes that are usually associated with ownership. Peck v. Bigelow, 34 Mass.App.Ct. 551, 556 (1993). In essence, the plaintiffs’ claim is based on Mr. Winiker’s mowing of the property in question and Mrs. Winiker’s maintenance of a garden and berry patch on part of the disputed area.
While I do find that Mrs. Winiker made use of some of the disputed property for a garden and a beriy patch, that use did not last for the requisite twenty-year period to establish the plaintiffs’ adverse possession of whatever area was utilized for those purposes.
I do find that for several years Mr. Winiker mowed and cared for at least a portion of the disputed property. Whether that use would be sufficient to establish “actual use” as required for adverse possession is a close question. There is case law which indicates that the mere mowing or tending of an area is insufficient and that some more permanent and obvious sign of possession was required. See Peck v. Bigelow, 34 Mass.App.Ct. 551, 556-57 (1993). However, there are other cases which indicate that the cultivation and maintenance of a lawn may be sufficient to meet the actual use requirement. See Pugatch v. Stoloff, 41 Mass.App.Ct. 536, 540-44 (1996) (claimants failed to acquire title by adverse possession to a large area of the plaintiffs lot consisting of overgrown, untended woodland, but did acquire title by adverse possession to a smaller area where they had maintained a lawn, a hedge, and a retaining wall); MacDonald v. McGillvary, 35 Mass.App.Ct. 902, 902-03 (1993) (maintenance of a lawn upon a narrow disputed strip of land was sufficient by itself to support claim of adverse possession); Conte v. Marine Lumber Co., 66 Mass.App.Ct. 505, 509 (2006) (clearing trees, burying rubbish, planting rye grass, and digging loam could suffice in intensity to qualify for adverse possession despite the lack of fencing or the construction of buildings). The sporadic use of some of the disputed property for the parking of vehicles or construction equipment or for the storing of construction materials or for the piling up of snow is not sufficient to establish ownership of the area claimed by the Winikers.
I find that the seasonal or sporadic use of the disputed property, in essence as a side yard, and the acts of mowing and tending a garden and a berry patch are insufficient to give the Winikers adverse possession of the property.
Open and Notorious
I find that the uses made of the Bell property by the Winikers were sufficiently open and notorious to meet those requirements.
Exclusive
The Winikers did not prove that their use was exclusive. I accept the testimony of Mr. McDevitt, Mr. Ortega, and Mr. Jackson as to their activities on the disputed properly. The Winikers acknowledged that they never attempted to exclude anyone from using the disputed property. There were no fences or walls or other barriers erected on the disputed property until Ms. Bell erected her fence in 2008. The plaintiffs failed to establish a “disseisin” of the other owners of the Bell property. See Peck, 34 Mass.App.Ct. at 557.
Twenty Years
The Winikers did not establish that they adversely possessed the property in question for twenty years. Even accepting that their activities on that property were sufficiently open, notorious, actual and exclusive through the time that the property was owned by Ms. Kimball and the Amarals, that ends around 1977 when the McDevitts purchased the property. As I have found, the activities of the McDevitts and the Ortegas and Mr. Jackson rebut the showing which the Winikers must make of exclusive use. There is no consecutive twenty-year period in which the Winikers exclusively, actually, and adversely used the disputed portion of the Bell property.
The encroachment of the portion of the Winikers’ driveway and retaining wall onto the Bell property may have begun in 1992. Ms. Bell clearly asserted her ownership of the encroaching portion in 2008, thereby ending the running of the time for adverse possession of that area.
Conclusion
For the foregoing reasons, I find that the plaintiffs have not proven by a preponderance of the credible evidence that they adversely possess the disputed portion of the Bell properly.
Defendant’s Counterclaim for Trespass
By way of a counterclaim, the defendant, Ms. Bell, asserts that a portion of the Winiker’s driveway and retaining wall encroach upon her property and constitute a trespass. The defendant owns the disputed property and, as found above, the plaintiffs do not have adverse possession of the portion of the disputed property on which their driveway and retaining wall encroach.
Applying the factors set forth in Capodilupo v. Vozzella, 46 Mass.App.Ct. 224, 226-27 (1999), I find that Ms. Bell is entitled to an order mandating the removal of the encroaching portions of the driveway and retaining wall. While the encroachment is not extensive, it cannot be viewed as “de minimis.” The building of the wall and driveway were done by Mr. *535 Winiker knowing where the property line was. There was no evidence that the costs of removal would be greatly disproportionate to the damage or injury to the plaintiffs ownership rights. I do not find under the circumstances of this case that an order of removal would be oppressive or inequitable. I will, therefore, enter an order that the offending portions of the plaintiffs’ driveway and retaining wall be removed from the defendant’s property.
Monetary Damages
I decline to order monetary damages to the defendant as a result of the encroachment by the driveway and the retaining wall. Ms. Bell has proven no such damages. The encroachment will be removed and she has not demonstrated that her properly has been permanently damaged. I decline to award her emotional distress damages as I do not find a basis for doing so and she has not proven that she has suffered such damages. I decline to award to her what she asserts is the present value of the property as I do not believe that to be a fair measure of any damage allegedly sustained. I also decline to award attorneys fees or costs, other than statutory costs, as I do not find a legal basis to do so and I do not find that the Winikers’ claims were frivolous or wholly insubstantial.
ORDER
For the foregoing reasons, final judgment shall enter for the defendant Kimberly Bell on the claim of the plaintiffs for adverse possession and on her counterclaim alleging a trespass by the Winikers. The plaintiffs are ordered to remove any portion of their driveway and retaining wall which encroaches on the property of Ms. Bell. The defendant’s request for monetary damages and attorneys fees is denied. The defendant may recover statutory costs.